UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Barbara Ann Curtis

v.

Civil No. 25-cv-536-LM-AJ
Opinion No. 2026 DNH 161 P

US Social Security Administration, Commissioner

**O R D E R**

Plaintiff Barbara Ann Curtis brought this action seeking judicial review of the decision of the Commissioner of the Social Security Administration (the Commissioner) denying her applications for disability insurance benefits (SSDI) under Title II and for supplemental security income (SSI) under Title XVI of the Social Security Act. Curtis moves to reverse the Commissioner's decision (doc. no. 8), and the Commissioner moves to affirm (doc. no. 10). Curtis contends that the Administrative Law Judge (ALJ) erred in failing to account for her moderate limitations in concentration, persistence, and pace in the residual functional capacity assessment and argues that Social Security Ruling (SSR) 24-3p is unenforceable. In response to the court's October 26, 2026 order for further briefing, Curtis also argues that the ALJ erred with respect to her step five determination. For the following reasons, the court reverses the Commissioner's decision and remands the case for further proceedings.

## STANDARD OF REVIEW

In reviewing the final decision of the Commissioner under 42 U.S.C. § 405(g), the court "is limited to determining whether the ALJ deployed the proper legal

standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020). The court defers to the ALJ's factual findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (quoting Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003)). To survive substantial-evidence review, the ALJ's conclusion must be supported by "such relevant evidence as a reasonable mind might accept as adequate to [draw the] conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

## BACKGROUND

Pursuant to Local Rule 9.1, the parties have submitted a joint statement of stipulated facts (doc. no. 7). See LR 9.1. That joint statement is part of the court's record, and the court only discusses facts relevant to the disposition of this matter.

Curtis applied for disability benefits and supplemental security income in 2023, when she was 52 years old. Curtis has been treated for various physical and mental health issues, including opioid use disorder, hypertension, heart attack, diabetes, carpal tunnel syndrome, and edema in her legs. For purposes of the current review, Curtis and the Commissioner focus on her mental health impairments.

## I. Mental Health History

Dr. Bryan Hybki, a psychiatrist, treated Curtis with medication for opioid use disorder. Based on Dr. Hybki's notes, Curtis was diagnosed in 2018 with anxiety and depression. She met with Dr. Hybki regularly for medication supervision, which included discussions of her life, stressors, and her recovery from opioid abuse.

In August of 2024, a state agency psychological consultant reviewed Dr. Hybki's records and assessed no more than mild limitations in Curtis's four areas of mental functioning. Almost a year later, on May 30, 2025, Dr. Hybki completed a mental impairment questionnaire for Curtis. He found no limitation or only slight limitation in Curtis's understanding and memory and in certain areas of Curtis's ability to sustain concentration and persistence, as well as her ability to adapt in a work setting. Dr. Hybki found moderate limitations in Curtis's ability to work in coordination with or in proximity to others, her ability to complete a normal workday and work week, and her ability to interact appropriately with the public. He also found marked limitations in Curtis's ability to ask simple questions or request assistance, to accept instructions and respond to criticism, to get along with coworkers, and to maintain socially appropriate behavior.

## II. The Hearing

The ALJ held a telephonic hearing as to Curtis's disability status on May 21, 2025. Curtis was represented during the hearing and testified, including about her depression and its effects on her activities. A vocational expert also testified.

The vocational expert testified that Curtis had previously worked as a motor vehicle assembler. The ALJ then posed this question to the vocational expert:

> I'd like you to consider an individual of the same age, education, and work history as this claimant. Start with the medium exertion level except lifting only up to 25 pounds occasionally. Lifting/carry 25 pounds occasionally and 15 frequently. Individual should be limited to pushing and pulling at the same rate if you will. There should be no climbing ladders, ropes, or scaffolds. . . . No firm grasping as in the use of power tools. No more than occasional reaching overhead or work overhead. Individual is limited to only occasionally crawling. Individual can frequently stoop, kneel, and crouch. And should not work around hazards like moving machinery or unprotected heights. Would an individual with those limitations be able to perform the past work?

Doc. no. 5 at 75-76. The vocational expert testified that a person with those limitations identified by the ALJ would not be able to do Curtis's past work as a motor vehicle assembler.

With respect to what other work a person could do with those limitations, the vocational expert testified that he would restrict that person to light work and listed the following occupations that would fit those limitations: housekeeping cleaner, cashier II, and mail clerk.

## III. The Commissioner's Decision

In her decision, the ALJ evaluated Curtis's claims under the five-step process described in 20 C.F.R. §§ 404.1520(a)(4) (for SSDI claims) and 416.920(a)(4) (for SSI claims).[1] The court proceeds directly to the ALJ's residual functional capacity

[1] Because the regulations in both parts require the same five-step analytical framework and are otherwise the same for purposes of the issues in this case, the

analysis at step four and then her decision at step five, which are at the heart of this case.

In assessing Curtis's residual functional capacity in relation to her mental limitations, the ALJ discounted the state agency consultants' finding that Curtis lacked severe impairments. The ALJ found that Curtis's medical records in fact supported a finding that her medical and mental impairments were severe. For purposes of assessing Curtis's mental limitations, the ALJ assigned Dr. Hybki's opinions little persuasive value because the ALJ found they were not supported by Dr. Hybki's treatment notes. Still, the ALJ concluded:

> in consideration for [Dr. Hybki's] opinion as well as the claimant's testimony regarding her anxiety and her course of treatment for her mental health symptoms, the undersigned found the claimant's mental impairments severe and found support for a moderate limitation in concentration, persistence, and pace. The undersigned also limited the claimant to simple instructions in consideration for her mental impairments; however, the evidence of record does not support additional or more restrictive mental health limitations for the reasons outlined above.

Doc. no. 5 at 35.

The ALJ ultimately described Curtis's residual functional capacity assessment as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and carry up to twenty-five pounds occasionally and fifteen pounds frequently; she can

court refers to Part 404. See Reagan v. Sec'y of Health & Hum. Servs., 877 F.2d 123, 124 (1st Cir. 1989); Natarelli v. O'Malley, Civ. No. 23-cv-542-SM-AJ, 2024 WL 2060835, at *2 n.3 (D.N.H. Apr. 22, 2024), report and recommendation approved sub nom. Natarelli v. US Soc. Sec. Admin., Acting Comm'r, 2024 WL 2050606, at *1 (D.N.H. May 8, 2024).

> push and pull the same amount as she can lift and carry; she can never climb ladders, ropes, or scaffolds; with no firm grasping, as in the use of power tools; no more than occasional reaching overhead or work overhead. She could reach in other directions frequently; she can occasionally crawl; she can frequently stoop, kneel, and crouch. She can never work around hazards, like moving machinery or unprotected heights. She is limited to simple work, including simple instructions.

Doc. no. 5 at 29.

At step five, the ALJ noted that Curtis was within months (or even days) of the next higher age category that would result in a disabled finding—but ultimately decided not to use the higher age category at that time because it was "not supported by the limited adverse impact of all factors on the claimant's ability to adjust to other work." Doc. no. 5 at 35. Then, based on the vocational expert's testimony, the ALJ concluded that Curtis could do the work that the vocational expert testified to: housekeeping cleaner, cashier II, and mail clerk. As a result, the ALJ found that Curtis was not disabled. Curtis sought review by the Appeals Council, which was denied, making the ALJ's decision the decision of the Commissioner.

## DISCUSSION

Curtis contends that the ALJ's decision must be reversed because the ALJ did not include the finding that Curtis had moderate limitations in "concentration, persistence, and pace" in the residual functional capacity assessment. Curtis also argues, in response to the court's request for further briefing on the issue, that the ALJ erred in not including that moderate limitation in her hypothetical to the

expert that provided the support for the ALJ's step five determination. The court disagrees on the first question but agrees on the second.

## I. The Residual Functional Capacity Assessment

A claimant's residual functional capacity is an assessment of "the most" the claimant can do despite her mental and physical limitations. See 20 C.F.R. § 404.1545(a)(1). To make that assessment, the ALJ must consider "all of the relevant medical and other evidence" as well as any "medically determinable impairments" that the ALJ is aware of. Id. § 404.1545(a)(2), (3). "The ALJ must also consider the claimant's own subjective allegations of functional limitations, but the ALJ is not required to take those allegations at face value and may reject them where they are unsupported by the medical evidence, treatment history, and activities of daily living." Gage v. O'Malley, 748 F. Supp. 3d 48, 57 (D.N.H. 2024) (quotation omitted). "[W]here an ALJ has identified moderate limitations in concentration, persistence or pace, [her] [residual functional capacity] finding . . . must either adopt restrictions that address 'staying on task' or explain why such restrictions are unwarranted." Dimambro v. US Soc. Sec. Admin., Acting Comm'r, No. 16-CV-486-PB, 2018 WL 301090, at *10 n.12 (D.N.H. Jan. 5, 2018).

Here, the ALJ sustainably accounted for Curtis's moderate limitations in concentration, persistence, and pace by limiting Curtis to simple instructions. The ALJ detailed how Curtis, despite having severe mental limitations, is still able to function and present herself. The ALJ specifically noted that the evidence from Dr. Hybki revealed that Curtis's "thought processes were linear and goal-direct; she had

clear and intact associations; she was fully oriented; her attention and concentration were intact to conversation; her cognition was appropriate; she had intact recent and remote recall; she had age appropriate fund of knowledge; and her insight and judgment were fair." Doc. no. 5 at 32. The ALJ then determined that, for those reasons, "the evidence of record does not support additional or more restrictive mental health limitations" besides specifying that her work require no more than "simple instructions." Id. at 35. Because the ALJ adopted restrictions that reasonably addressed Curtis's moderate limitations in concentration, persistence, and pace, there was no error. Dimambro, 2018 WL 301090, at *10 n.12.

## II. The Step Five Determination

As noted, an ALJ's finding that a claimant is not disabled must be supported by substantial evidence. 42 U.S.C. § 405(g); Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). At step five, it is the Commissioner's burden to "com[e] forward with evidence of specific jobs in the national economy that the applicant can still perform" given her limitations. Seavey, 276 F.3d at 5. A vocational expert's testimony about jobs that a claimant can do despite her limitations only provides substantial evidence to support a finding of not disabled under step five if the opinion "responds to a hypothetical that accurately describes the claimant's limitations." Daria G. v. Bisignano, No. 1:25-cv-00454-MSM-PAS, 2026 WL 2254427, at *3 (D.R.I. Aug. 5, 2026). "A moderate limitation reflected in the ALJ's written decision is 'not the equivalent of no limitation at all' and must be accounted for in the hypothetical." Id. (quoting Cohen v. Astrue, 851 F. Supp. 2d 277, 286 (D.

Mass. 2012)). The ALJ's step five decision here rested entirely on the vocational expert's testimony.

As the court explained, in her residual functional capacity assessment, the ALJ limited Curtis to simple instructions to account for her moderate limitations in concentration, persistence and pace. But, as the Commissioner concedes, the ALJ neglected to include that limitation in her hypothetical question posed to the vocational expert. The ALJ acknowledged the deficient hypothetical in her decision, explaining that "[w]hile the hypothetical posed to the vocational expert did not include a limitation to simple instructions, this additional limitation will not affect the claimant's ability to perform unskilled jobs." The ALJ's explanation is unpersuasive, as a limitation to simple work is by itself insufficient to address moderate limitations in concentration, persistence, or pace. Daria, 2026 WL 2254427, at *2 (quoting Dimambro, 2018 WL 301909, at *10 n.12).

The Commissioner argues that this error was harmless because one of the three jobs the vocational expert mentioned, housekeeper, would "require no more than simple work or simple instructions." Doc. no. 13 at 1; see Lavoie v. Berryhill, No. 17-CV-49-PB, 2018 WL 922140, at *7 (D.N.H. Feb. 16, 2018) (incomplete hypothetical posed to a vocational expert may be harmless error "if the vocational expert's opinion would have been the same even with the omitted impairment"). The Commissioner also argues that the other two jobs identified, cashier II and mail clerk, are consistent with the same despite their higher reasoning level. The court is unpersuaded.

To begin, "the error occurred at step five . . . at which point the [Commissioner] bore the burden of showing that jobs existed for the claimant in the national economy. Class Rosario v. Sec'y of Health & Hum. Servs., 915 F.2d 1556, *3 (1st Cir. 1990). Moreover, the Commissioner's arguments suffer from the same flaw as the ALJ's step five explanation. In the language of disability determinations, "simple work" and "simple instructions" are distinct. Moderate limitations in concentration, persistence, or pace require either corresponding "restrictions that address 'staying on task'" or an explanation as to "why such restrictions are unwarranted." Daria, 2026 WL 2254427, at *2 (quoting Dimambro, 2018 WL 301909, at *10 n.12). The ALJ found that Curtis had such moderate limitations. But the vocational expert only considered the simple work limitation, and the ALJ did not adequately justify why the simple instructions limitation did not need to be considered at step five.

The ALJ's determination of Curtis's residual functional capacity confirms this. Though the ALJ did not fully credit the evidence of Curtis's mental health conditions, the ALJ still took care to explain in her residual functional capacity assessment that Curtis's moderate limitations in concentration, persistence, and pace required the additional limitation of simple instructions along with simple work to ensure that Curtis could stay on task. That is the analysis of the type missing from the ALJ's step five analysis.

Absent such explanations, and without more, the court cannot conclude that the Commissioner carried his burden at step five. See Seavey, 276 F.3d at 5.

Accordingly, the ALJ's finding at step five that Curtis was not disabled is not supported by substantial evidence.[2] See Dimambro, 2018 WL 301909, at *10 n.12.

**CONCLUSION**

For the foregoing reasons, the court grants Curtis's motion to reverse (doc. no. 8) and denies the Commissioner's motion to affirm (doc. no. 10). The case is remanded for further proceedings pursuant to 42 U.S.C. § 405(g). The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Landya McCafferty
United States District Judge

November 9, 2026

cc: Counsel of Record

[2] Curtis also challenges SSR 24-3p as being contrary to law and promulgated in excess of the Social Security Administration's authority. Because the court remands the case on other grounds, it is not necessary to address the challenge to SSR 24-3p.